# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James H. Alesia | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 4801 | **DATE** | April 1, 2003 |
| **CASE TITLE** | *Interlease Aviation Investors II (ALOHA) L.L.C., et al. vs. Vanguard Airlines, Inc., et al.* | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. The court grants in part and denies in part the motion to dismiss filed by defendants Seabury Group LLC, Brian Gillman, Ellen N. Artist, David A. Rescino, and Thomas W. Mahr. [6-1] Accordingly, defendants Brian Gillman, Ellen N. Artist, David A. Rescino and Thomas W. Mahr are dismissed with prejudice. The court dismisses Counts IV and VIII of plaintiffs' complaint without prejudice. Plaintiffs are given until Monday, April 14, 2003 to file an amended complaint that cures the noted deficiencies under Rule 9(b).

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | | |
|---|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | **Document Number** | |
| | No notices required. | | number of notices — – | | | |
| ✔ | Notices mailed by judge's staff. | | APR 02 2003 | | | |
| ✓ | Notified counsel by telephone. | | date docketed | | 52 | |
| | Docketing to mail notices. | | docketing deputy initials | | | |
| | Mail AO 450 form. | | | | | |
| | Copy to judge/magistrate judge. | | 4/1/03 | | | |
| | | | date mailed notice | | | |
| CW | courtroom deputy's initials | | | CW | mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | | | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

DOCKETED

APR 0 2 2003

| | |
|---|---|
| INTERLEASE AVIATION INVESTORS II (ALOHA) L.L.C., an Illinois limited liability company, INTERLEASE AVIATION INVESTORS III (TACA) L.L.C., an Iowa limited liability company, and MIMI LEASING CORP., an Iowa corporation, <br><br> Plaintiffs, <br><br> v. <br><br> VANGUARD AIRLINES, INC., a Delaware corporation, PEGASUS AVIATION, INC., a foreign corporation, SEABURY GROUP, LLC, a New York limited liability company, BRIAN GILLMAN, ELLEN N. ARTIST, DAVID A. RESCINO, THOMAS W. MAHR, and RICHARD S. WILEY, <br><br> Defendants. | Case No: 02 C 4801 <br><br> Judge James H. Alesia |

## MEMORANDUM OPINION AND ORDER

Currently before the court are: (1) a motion to dismiss the complaint for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2), filed by defendants Brian S. Gillman, Ellen N. Artist, David A. Rescino, and Thomas W. Mahr and (2) a motion to dismiss Counts IV, V, and VIII, pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), filed by defendants Seabury Group LLC, Brian S. Gillman, Ellen N. Artist, David A. Rescino, and Thomas W. Mahr. For the following reasons, the court: (1) grants the motion to dismiss the complaint for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2), as to defendants Brian S. Gillman, Ellen N. Artist, David A. Rescino, and Thomas W. Mahr and

(2) grants in part and denies in part the motion to dismiss pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6).

# I. **BACKGROUND**

Defendant Vanguard Airlines, Inc. ("Vanguard") leased several aircraft from plaintiff Interlease Aviation Investors II (ALOHA) L.L.C. ("Interlease II"), plaintiff Interlease Aviation Investors III (TACA) L.L.C. ("Interlease III"), and plaintiff Mimi Leasing Corp. ("Mimi") (collectively, "plaintiffs"). Due to financial hardship, Vanguard later sought to modify the leases. As a result, Vanguard and plaintiffs entered into several agreements in principle, under the terms of which Vanguard issued promissory notes for the amounts of the deferred rents. Vanguard has not made the necessary payments on these promissory notes or on the leases.

On or about January 25, 2001, Brian S. Gillman ("Gillman"), a vice president and general counsel of Vanguard, and Ellen N. Artist ("Artist"), a managing director of defendant Seabury Group LLC ("Seabury"), met with plaintiffs in Chicago ("the Chicago meeting"). At that meeting, plaintiffs were informed that: (1) Vanguard was insolvent; (2) Vanguard had retained Seabury to provide financing expertise; (3) Vanguard had strategic plans to ensure reliability and reduce costs by converting its fleet to a different type of aircraft leased from Pegasus Aviation, Inc. ("Pegasus"); (4) Pegasus had committed to investing over $7.5 million in capital in Vanguard, $4 million of which had closed; (5) approximately $3 million of additional capital to be invested by Pegasus was contingent upon plaintiffs' deferral of Vanguard's obligations; (6) Vanguard's economic survival depended upon plaintiffs deferring Vanguard's lease obligations; and (7) as a result of Pegasus's investment in Vanguard, it would become a substantial Vanguard shareholder.

2

In reliance upon these representations, plaintiffs and Vanguard entered into several agreements in principle on March 8, 2001. Under the terms of these agreements, plaintiffs would defer Vanguard's obligations under the leases, and Vanguard would provide each plaintiff with a promissory note for the deferred lease payments. However, Vanguard has not made the necessary payments on the promissory notes or on the original leases. Additionally, Vanguard has breached other terms of the agreements in principle.

Plaintiffs allege that the representations made at the Chicago meeting were false and misleading. Plaintiffs further allege that Vanguard and Seabury failed to disclose additional material information regarding Vanguard's financial state and the nature of Vanguard's transactions with Seabury and Pegasus. For example, plaintiffs allege Artist and Gillman failed to fully disclose the extent of Seabury's financial interest in Vanguard, and that they failed to disclose that Vanguard and Seabury expected the fleet transition to adversely affect Vanguard in the short term. Plaintiffs also allege that Vanguard's financial condition and Pegasus's financial commitments were materially different than Vanguard and Seabury represented. In fact, rather than Pegasus becoming a substantial Vanguard shareholder, it became Vanguard's largest creditor. In addition, Vanguard and Seabury knew that Pegasus's funding would be insufficient to permit Vanguard to pay plaintiffs the amounts due on the notes.

Subsequent to the Chicago meeting, Thomas W. Mahr ("Mahr") replaced Artist as Seabury's representative in the negotiations. According to plaintiffs, Mahr was fully aware of the misleading representations made to plaintiffs, but failed to correct the plaintiffs' misapprehensions during his conversations with plaintiffs.

3

In July 2001, Pegasus's chief executive officer, Richard S. Wiley ("Wiley") traveled to Illinois to meet with plaintiffs' representative, Philip Coleman ("Coleman"). Wiley claimed to be negotiating on Vanguard's behalf and told Coleman that Vanguard would breach its commitments to plaintiffs unless plaintiffs accepted a new proposal. Wiley also sent a letter to Coleman on August 1, 2001, in which Wiley set forth a new proposal. David A. Rescino ("Rescino") the vice-president-finance of Vanguard since March 2001, sent two subsequent restructuring proposals to Coleman. On December 27, 2001, February 13, 2002, and June 24, 2002, Rescino wrote letters to both Mimi and Interlease II, informing them that Vanguard was terminating the leases.

As a result, plaintiffs brought this action by filing an eight-count complaint. In Count I, Mimi alleges breach of contract against Vanguard. In Count II, Interlease III alleges breach of contract against Vanguard. In Count III, Interlease II alleges breach of contract against Vanguard. In Count IV, plaintiffs allege fraud against defendants Vanguard, Seabury, Gillman, Artist, and Mahr. In Count V, plaintiffs allege negligent misrepresentation against defendants Seabury, Artist, and Mahr. In Count VI, plaintiffs allege tortious interference against Pegasus and Wiley. In Count VII, plaintiffs allege unjust enrichment against Pegasus and Wiley. In Count VIII, plaintiffs allege fraudulent scheme against all defendants.

This court has subject matter jurisdiction over the case pursuant to 28 U.S.C. § 1332 as complete diversity between the parties exists, and the amount in controversy exceeds $75,000.00. In response to this complaint, defendants Gillman, Artist, Rescino, and Mahr (collectively the "individual defendants") have filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) ("Rule 12(b)(2)") for lack of personal jurisdiction. Additionally,

defendants Seabury, Gillman, Artist, Rescino, and Mahr have moved to dismiss Counts IV, V, and VIII pursuant to Federal Rules of Civil Procedure 9(b) ("Rule 9(b)") and 12(b)(6) ("Rule 12(b)(6)"). The court will address each motion in turn.

## II. DISCUSSION

### A. Individual defendants' motion to dismiss pursuant to Rule 12(b)(2)

#### 1. Standard for Deciding a Rule 12(b)(2) Motion to Dismiss

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of proving that personal jurisdiction exists. *Cent. States, S.E. & S.W. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 939 (7th Cir. 2000). In deciding the motion to dismiss, the court may receive and consider affidavits from both parties. *Greenberg v. Miami Children's Hosp. Research Inst., Inc.*, 208 F. Supp. 2d 918, 922 (N.D. Ill. 2002) (citing *Kontos v. United States Dep't of Labor*, 826 F.2d 573, 576 (7th Cir. 1987)). Any conflicts in the pleadings and affidavits are to be resolved in the plaintiffs' favor, but the court accepts as true any facts contained in the defendants' affidavits that remain unrefuted by the plaintiffs. *Cont'l Cas. Co. v. Marsh*, No. 01 C 0160, 2002 WL 31870531, at *2 (N.D. Ill. Dec. 23, 2002) (citing *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997)).

#### 2. Defendants' motion

The individual defendants Gillman, Artist, Rescino, and Mahr – none of whom reside in Illinois – argue that the court lacks personal jurisdiction over them. In response, plaintiffs contend that the court has specific jurisdiction over the individual defendants because they committed torts and transacted business in Illinois. Furthermore, plaintiffs argue that their claims against the individual defendants arise out of each defendant's contacts with Illinois.

In a case based upon diversity of citizenship, a federal district court sitting in Illinois has personal jurisdiction over a nonresident defendant only if an Illinois court would have jurisdiction. *Netzky v. Fiedler*, No. 00 C 4652, 2001 WL 521396, at *1 (N.D. Ill. May 15, 2001). For an Illinois court to have personal jurisdiction over a nonresident defendant, personal jurisdiction must be permitted by: (1) Illinois statutory law; (2) the Illinois Constitution; and (3) the Constitution of the United States. *Cont'l Cas. Co.*, 2002 WL 31870531, at *4. With respect to Illinois statutory law, the Illinois long-arm statute now extends personal jurisdiction to the limit allowed under the Illinois Constitution and the Constitution of the United States. *LaSalle Bank Nat'l Ass'n v. Epstein*, No. 99 C 7820, 2000 WL 283072, at *1 (N.D. Ill. Mar. 9, 2000) (citing *RAR, Inc.*, 107 F.3d at 1276). "'Because the Illinois statute authorizes personal jurisdiction to the [federal] constitutional limits, the three inquiries ... collapse into two constitutional inquiries – one state and one federal.'" *Cont'l Cas. Co.*, 2002 WL 31870531, at *4 (quoting *RAR, Inc.*, 107 F.3d at 1276). If jurisdiction is improper under either the Illinois Constitution or the Constitution of the United States, the court cannot exercise jurisdiction over the defendant. *Id.*

### a.    Illinois Constitutional Limits

The Illinois Supreme Court has held that, under the Illinois Constitution's guarantee of due process, jurisdiction is to be "asserted only when it is fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 715 (7th Cir. 2002) (quoting *Rollins v. Ellwood*, 565 N.E.2d 1302, 1316 (Ill. 1990)). The Seventh Circuit has stated the Illinois courts "have given little guidance

as to how state due process differs from federal protection in the context of personal jurisdiction." *RAR*, 107 F.3d at 1276. Furthermore, the Seventh Circuit has recently found that "there is no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction." *Hyatt*, 302 F.3d at 715 (citing *RAR*, 107 F.3d at 1276; *Klump v. Duffus*, 71 F.3d 1368, 1371 n.4 (7th Cir. 1995)). Additionally, the Seventh Circuit has noted that in no case since the Illinois Supreme Court's 1990 decision in *Rollins* has an Illinois court found federal due process to allow personal jurisdiction while Illinois due process prohibited it. *Id.* Since those statements by the Seventh Circuit, other courts in the circuit have bypassed the Illinois due process analysis and conducted only a federal personal jurisdiction analysis. *See Cont'l Cas. Co.*, 2002 WL 31870531, at *4 (conducting only a federal due process analysis because the parties did not present any evidence to suggest that the outcome would be otherwise under state law); *United Fin. Mortgage Corp. v. Bayshores Funding Corp.*, No. 02 C 5260, 2002 WL 31356408, at *4 (N.D. Ill. Oct. 18, 2002) (condensing personal jurisdiction analysis to a single federal due process inquiry).

In the instant case, the parties raise no argument regarding whether personal jurisdiction would be "fair, just, and reasonable" under the Illinois Constitution. Instead, they dispute only whether personal jurisdiction would comport with federal due process requirements. Therefore, the court will proceed to the federal due process inquiry. *See Mac Funding Corp. v. N.E. Impressions, Inc.*, 215 F. Supp. 2d 978, 980 (N.D. Ill. 2002) (proceeding directly to federal personal jurisdiction analysis where parties failed to address Illinois standards and court's own research revealed nothing that would indicate that Illinois law would lead to a different outcome than federal law).

### b.    Federal Constitutional Limits

The Due Process Clause of the Fourteenth Amendment limits a state court's power to assert personal jurisdiction over a nonresident defendant. *RAR*, 107 F.3d at 1277 (citation omitted). Federal due process requires that a nonresident defendant have certain minimum contacts with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Hyatt*, 302 F.3d at 716 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (additional citation omitted). This standard varies depending on whether the jurisdiction alleged is general or specific. *RAR*, 107 F.3d at 1277.

General jurisdiction exists in cases where a defendant has "continuous and systematic" business contacts with the forum state. *Hyatt*, 302 F.3d at 713. In contrast, in specific jurisdiction cases, the suit must "arise out of" or "be related to" the defendant's minimum contacts with the forum state. *Id.* at 716.

Here, plaintiffs allege no such "continuous and systematic" contacts by defendants with Illinois that could support the court's exercise of general personal jurisdiction. In fact, plaintiffs allege, "Defendants Seabury, Artist, Mahr, Gillman, and Rescino are subject to the jurisdiction of this Court because plaintiffs' causes of action arise from their transaction of business and commission of a tortious act within the State of Illinois." (Compl. at ¶ 15.) Additionally, all of plaintiffs' arguments that personal jurisdiction is proper in this case focus upon the individual defendants' isolated actions in Illinois with regard to this case. Furthermore, plaintiffs do not dispute the individual defendants' statements that they do not engage regularly in any activity in Illinois. Thus, the court finds that the individual defendants do not have continuous and systematic contacts with Illinois. Consequently, the court does not have general personal

8

jurisdiction over the individual defendants. Therefore, the court will determine whether specific jurisdiction is proper in this case. *See Celozzi v. Boot*, No. 00 C 3285, 2000 WL 1141568, at *4 (N.D. Ill. Aug. 11, 2000) (reviewing whether specific jurisdiction exists, where plaintiffs raised no allegations of general jurisdiction).

In determining whether specific personal jurisdiction exists, the court first must determine whether the defendant has "'purposefully established minimum contacts within the forum State.'" *Hyatt*, 302 F.3d at 716 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)). It is crucial that the court determine whether the defendant "'should reasonably anticipate being haled into court [in the forum State].'" *Id.* (quoting *Burger King Corp.*, 471 U.S. at 474 (citation omitted)). It is reasonable for a defendant to anticipate being haled into court in the forum state when he has "'purposefully availed himself of the privilege of conducting activities' there." *Id.* (quoting *Burger King Corp.*, 471 U.S. at 475 (citation omitted)).

Second, the court must determine whether those contacts would make personal jurisdiction "reasonable and fair under the circumstances." *RAR*, 107 F.3d at 1277. After minimum contacts have been established, a defendant "can only escape jurisdiction by making a 'compelling case' that forcing [him] to litigate in [the forum] would violate traditional notions of fair play and substantial justice." *Logan Prods., Inc. v. Optibase, Inc.*, 103 F.3d 49, 53 (7th Cir. 1996) (quoting *Burger King Corp.*, 471 U.S. at 477). In assessing whether jurisdiction is consistent with fair play and substantial justice the court should consider: (1) the burden on the defendant in litigating in the forum; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interests of the interstate judicial system in obtaining an efficient resolution of the controversy; and (5) the interests of the several states in

furthering fundamental substantive policies. *Id.* The court will now apply the above principles to each of the individual defendants.

### i. Artist and Gillman

Because Artist and Gillman share the same contacts with Illinois, the court will address simultaneously whether it is constitutional to assert personal jurisdiction over the two of them. Artist, a resident of Utah and Connecticut, and Gillman, a resident of Arizona, argue that their only contact with Illinois was a single meeting with plaintiffs in Chicago. That meeting, they contend, is not enough to subject them to the jurisdiction of this court. Plaintiffs argue in response that the single meeting does constitute sufficient minimum contact between Artist and Gillman and Illinois as to subject them to the court's personal jurisdiction. First, the court will determine whether Artist and Gillman have purposefully established minimum contacts with Illinois. Second, the court will review whether the exercise of jurisdiction over Artist and Gillman in this case would comport with traditional notions of fair play and substantial justice.

A defendant is deemed to have minimum contacts with a state when the defendant intentionally directs his activities at residents of the forum state. *Yuba Nursing Home, Inc. v. TLC of the Bay Area, Inc.*, No. 01 C 3612, 2001 WL 1136140 at *3 (N.D. Ill. Sept. 26, 2001) (citing *Burger King Corp.*, 471 U.S. at 474). Whether a defendant solicited the transaction that is the subject matter of the litigation is a relevant fact in determining whether the defendant has minimum contacts with the forum state. *United Fin. Mortgage Corp.*, 2002 WL 31356408, at *6 (citing *Federated Rural Elec. Ins. Corp. v. Inland Power & Light Co.*, 18 F.3d 389, 394 (7th Cir. 1994)). Active solicitation of a forum state resident that results in an agreement can support personal jurisdiction. *Arnold v. Goldstar Fin. Sys., Inc.*, No. 01 C 7694, 2002 WL 1941546 at

10

*5 (N.D. Ill. Aug. 22, 2002) (citing *Madison Consulting Group v. South Carolina*, 752 F.2d 1193, 1202-03 (7th Cir. 1990)).

According to the complaint, Artist and Gillman approached plaintiffs, requested to modify Vanguard's obligations under the leases, and traveled to Chicago to negotiate with plaintiffs on behalf of Vanguard and Seabury. Artist and Gillman initiated the discussions that included the alleged misrepresentations and resulted in the agreements in principle that provide the basis for this lawsuit. Therefore, the court concludes that Artist and Gillman established minimum contacts with Illinois and finds that plaintiffs' claims against Artist and Gillman arise out of those contacts.

Furthermore, the court finds that it does not offend traditional notions of fair play and substantial justice to require Artist and Gillman to defend this action in Illinois. First, litigating this case in Illinois would place a minimal burden upon Artist and Gillman because Chicago is a major metropolitan area and both Artist and Gillman have traveled to Chicago previously. *See Logan Prods., Inc.*, 103 F.3d at 54 (noting that it is usually not unfair to force a defendant to defend a lawsuit in a state in which it has engaged in economic activity); *Birnberg v. Milk St. Res. Assoc. Ltd. P'ship*, Nos. 02 C 0978, 02 C 3436, 2003 WL 151929 at *8 (N.D. Ill. Jan. 21, 2003) (holding that travel from Massachusetts to Illinois was not oppressive due to modern advances in communication and transportation) (citation omitted). Second, Illinois has a significant interest in the adjudication of this case given that Interlease II is an Illinois company and both Interlease II and Interlease III have their principal places of business in Illinois. Furthermore, the allegedly tortious conduct of Gillman and Artist occurred in Illinois. *See Celozzi*, 2000 WL 1141568, at *4 ("Illinois has an interest in providing a forum for disputes

11

resulting from a business relationship formed between an Illinois resident and a nonresident".). In contrast, Artist and Gillman have failed to point to even one fact that would make a compelling case of why jurisdiction is unreasonable. Thus, the court finds that the exercise of personal jurisdiction over Gillman and Artist in this case does not offend traditional notions of fair play and substantial justice.

Therefore, the court concludes that it is consistent with federal constitutional principles to exercise personal jurisdiction over Gillman and Artist in this case.

### ii. Rescino

Rescino, a resident of Texas, argues that the correspondence that he sent to Illinois does not render him subject to the court's personal jurisdiction. In response, plaintiffs argue that these letters are sufficient minimum contacts that constitute the basis of their fraudulent scheme claim against Rescino.[1]

It is well-settled that the defendant need not be physically present in the forum state to satisfy the minimum contacts requirement. *Clark Prods., Inc. v. Rymal*, No. 02 C 6893, 2002 WL 31572569, at *2 (N.D. Ill. Nov. 19, 2002) (citing *Hanson v. Denkla*, 357 U.S. 235 (1958)). The Seventh Circuit has noted:

---

[1] Because Mimi is not an Illinois corporation and does not have its principal place of business in Illinois, the court will not consider the letters sent from Rescino to Mimi. For purposes of jurisdiction, the court is concerned only with whether Rescino had sufficient minimum contacts with Illinois. As a result, the court will only consider: (1) the two restructuring proposals sent by Rescino to plaintiffs in Illinois and (2) the three letters sent by Rescino to Interlease II, in which Rescino informed Interlease II that he was terminating the leases, postponing the aircraft's return, and, finally, returning the aircraft to Interlease II.

> It is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines. ... So long as a commercial actor's efforts are 'purposefully directed' towards residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there."

*Mid-Am. Tablewares, Inc. v. Mogi Trading Co.*, 100 F.3d 1353, 1361 (7th Cir. 1996) (citing *Burger King Corp.*, 471 U.S. at 476).

In this case, Rescino mailed or faxed five communications to Illinois. Although not all plaintiffs were Illinois companies, all of Rescino's correspondence was addressed to Phil Coleman ("Coleman"), apparently a representative of all three plaintiffs, whose office was located in Illinois. Included in that correspondence was a fax consisting of three letters – one addressed to each plaintiff – outlining Vanguard's proposals for restructuring the financial relationship between Vanguard and plaintiffs. (Compl. Ex. 21, 22.) Those letters contained the alleged misrepresentations that provide the basis for plaintiffs' fraudulent scheme case against Rescino. (Compl. Ex. 22.) Additionally, Vanguard initiated the restructuring of the relationship between itself and plaintiffs. Thus, the court concludes that Rescino's actions were knowingly and intentionally directed towards Illinois. Therefore, the court finds that Rescino has established minimum contacts with Illinois, out of which plaintiffs' claims against him arise.

Furthermore, the court finds that it does not offend traditional notions of fair play and substantial justice to require Rescino to defend this action in Illinois. First, as already noted *supra* Sect. II.A.2.b.i, litigating this case in Illinois would place a minimal burden upon Rescino because Chicago is a major metropolitan area. Second, as already noted, *supra* Sect. II.A.2.b.i, Illinois has a significant interest in the adjudication of this case given that Interlease II is an

Illinois company and both Interlease II and Interlease III have their principal places of business in Illinois. Furthermore, Rescino's allegedly tortious conduct was directed toward Illinois and two of the plaintiffs suffered injuries in Illinois. *See Int'l Molding Mach. Co. v. St. Louis Conveyor Co.*, No. 01 C 8305, 2002 1838130, at *5 (Aug. 12, 2002) (holding that Illinois has a strong interest in adjudicating cases arising from injuries occurring in its borders, including disputes arising out of business relationships between Illinois residents and nonresidents). Rescino offers no argument or evidence to support a conclusion that the exercise of jurisdiction over him in this case would be unreasonable. Thus, the court finds that the exercise of personal jurisdiction over Rescino in this case does not offend traditional notions of fair play and substantial justice.

Therefore, the court concludes that it is consistent with federal constitutional principles to exercise personal jurisdiction over Rescino in this case.

### iii.    Mahr

Mahr argues that this court does not have personal jurisdiction over him because plaintiffs have failed to specify the nature, location, or frequency of Mahr's conversations with plaintiffs. Mahr, a resident of Connecticut, replaced Artist as Seabury's representative *after* the Chicago meeting. Plaintiffs' only allegations specifically regarding Mahr state that Mahr had numerous conversations with plaintiffs, Mahr knew of plaintiffs' misapprehension, and Mahr failed to disclose any facts necessary to correct plaintiffs' misapprehension. Plaintiffs never describe the substance of those conversations or where Mahr and plaintiffs, respectively, were located during those conversations. Additionally, there is no allegation that Mahr initiated any of the negotiations. Therefore, the court finds that plaintiff has failed to meet its burden of establishing

14

that Mahr had minimum contacts with Illinois. Thus, the exercise of personal jurisdiction over Mahr would violate federal principles of due process. Accordingly, the court grants the individual defendant's Rule 12(b)(2) motion to dismiss as to Mahr.

### c.    The Fiduciary Shield Doctrine

Based on the principles of fairness required by the Illinois Constitution, Illinois allows a nonresident defendant to raise a defense to personal jurisdiction known as the fiduciary shield doctrine. *Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 912 (7th Cir. 1995) (citing *Rollins*, 565 N.E.2d at 1313-18). The fiduciary shield doctrine denies jurisdiction over an individual whose presence and activity in Illinois were solely on behalf of his employer or other principal. *Clark Prods., Inc.*, No. 02 C 6893, 2002 WL 31572569, at *3 (N.D. Ill. Nov. 19, 2002) (citing *Rice*, 38 F.3d at 912). The Illinois Supreme Court has stated that where an individual defendant's conduct in Illinois is a product of – and is motivated by – his "employment situation and not his personal interests it would be unfair to use this conduct to assert personal jurisdiction over him as an individual." *Rollins*, 565 N.E.2d at 1314.

However, there are limitations on the defendant's ability to use the fiduciary shield doctrine as a defense. First, the fiduciary shield doctrine is discretionary or "equitable," rather than an absolute entitlement, and should be applied only where equity demands it. *Consumer Benefit Servs., Inc.*, 2002 WL 314270021, at *3. Second, the doctrine will be removed if the defendant was acting also, or instead, to serve his own personal interests. *Rice*, 38 F.3d at 912. Third, the discretion exercised by the individual is a factor that a court should consider when determining whether the fiduciary shield doctrine applies to a case. *LaSalle Bank Nat'l Ass'n*, 2000 WL 283072, at *1. With those three exceptions in mind, the court will determine whether

the fiduciary shield doctrine prevents it from exercising jurisdiction over Artist, Gillman, or Rescino.[2]

Artist, Gillman, and Rescino argue that the fiduciary shield doctrine precludes personal jurisdiction over them because their actions were taken solely in Gillman and Rescino's capacities as Vanguard officers and Artist's capacity as a managing director of Seabury. Plaintiffs argue in response that the fiduciary shield does not apply to Artist, Gillman, and Rescino because their positions with Vanguard and Seabury imply they had substantial ownership interests in the companies, as well as that they exercised broad discretion in their conduct.

The mere fact that an individual "is a member of management or holds controlling positions in a corporation does not nullify the protection of the fiduciary shield." *Int'l Fin. Servs. Corp. v. Didde Corp.*, No. 00 C 6433, 2002 WL 398513, at *5 (N.D. Ill. Mar. 24, 2002) (citations omitted). This is due to Illinois's recognition that corporate officers, directors, and shareholders are separate and distinct from the corporation. *Cont'l Cas. Co.*, 2002 WL 31870531, at *7. In reviewing the personal interest exception, the critical factor is the individual's status as a corporate shareholder, not merely whether he is an officer or director. *Plastic Film Corp., Inc. v. Unipac, Inc.*, 128 F. Supp. 2d 1143, 1147 (N.D. Ill. 2001).

---

[2]Plaintiffs argue that the fiduciary shield doctrine is merely a venue rule that does not apply to the court's personal jurisdiction analysis. In support of their position, plaintiffs cite *ISI Int'l, Inc. v. Borden Ladner Gervais*, 256 F.3d 548, 552 (7th Cir. 2001). That case, however, holds only that the fiduciary shield doctrine does not apply in cases in which jurisdiction is based upon Federal Rule of Civil Procedure 4(k)(2) ("Rule 4(k)(2)"). *Id.* at 553. Because Rule 4(k)(2) does not apply to the instant case, the court finds *ISI Int'l* distinguishable and will apply the fiduciary shield doctrine.

Plaintiffs provide no factual support for their conclusory assertions that Artist, Gillman, and Rescino possessed substantial ownership interests in Seabury and Vanguard or that they were acting with broad discretion in their dealings with plaintiffs. Furthermore, there is no evidence that any of the three individuals had any personal interest in their transaction with plaintiffs. Instead, plaintiffs' allegations and arguments regarding the application of the fiduciary shield doctrine relate only to the positions held by Artist, Gillman and Rescino. Thus, the court finds that none of the fiduciary shield exceptions apply to Artist, Gillman, or Rescino. *See Int'l Fin. Servs. Corp.*, 2002 WL 398513, at *5 (holding that fiduciary shield doctrine did not apply where plaintiff alleged only individual defendants' status within the corporation and their actions in that capacity).

The court concludes that, although the exercise of personal jurisdiction over Artist, Gillman, and Rescino would comply with federal due process requirements, the fiduciary shield doctrine would cause an Illinois court to decline to exercise personal jurisdiction over the three remaining individual defendants. Because the fiduciary shield doctrine under Illinois law bars the exercise of jurisdiction over the three remaining individual defendants, the court grants the individual defendants' motion to dismiss as to Artist, Gillman, and Rescino.

Therefore, the court grants the individual defendants' motion to dismiss pursuant to Rule 12(b)(2) for lack of personal jurisdiction as to Artist, Gillman, Rescino, and Mahr.

**B.**    **Seabury's Motion to Dismiss Counts IV, V, and VIII**

Seabury has moved to dismiss Counts IV, V, and VIII of the complaint, under both Rule

9(b) and Rule 12(b)(6).[3]  First, the court will review Seabury's Rule 9(b) arguments.  Second, the court will analyze Seabury's Rule 12(b)(6) arguments.

### 1.    Seabury's Rule 9(b) Motion to Dismiss

Seabury makes two arguments in support of its Rule 9(b) motion to dismiss:  (1) plaintiffs' allegations do not specify each defendant's participation in the alleged fraud and (2) plaintiffs' allegations of fraud "on information and belief" are insufficient.

Rule 9(b) requires a plaintiff to plead the circumstances constituting fraud "with particularity."  FED R. CIV. P. 9(b).  To meet the particularity requirements of Rule 9(b), a complaint must specify the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff. *Slaney v. Int'l Amateur Ath. Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001).  With this standard in mind, the court will address each of Seabury's arguments in turn.

### a.    Specifying Defendants

First, Seabury argues that plaintiffs' allegations of fraud and fraudulent scheme are insufficient because they do not indicate which defendant engaged in which fraudulent conduct. Plaintiffs argue in response that the Rule 9(b) pleading standard is relaxed when a plaintiff lacks access to the facts necessary to comply with the rule and when the individual defendants are corporate insiders.

---

[3]Because the court does not have personal jurisdiction over the individual defendants Artist, Gillman, Rescino, and Mahr, the court will consider the remaining motion to dismiss only with regard to Seabury.  Nevertheless, even if the court did have personal jurisdiction over the individual defendants, the same analysis and conclusions would apply.

In cases involving multiple defendants, the complaint should notify each defendant of the nature of his alleged participation in the fraud. *Fishman v. Meinen*, No. 02 C 3433, 2003 WL 444223, at *6 (N.D. Ill. Feb. 24, 2003) (citing *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994)). A complaint that does not specify which defendants took part in which activity is insufficient to satisfy Rule 9(b). *Id.* (citing *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990)). This standard also applies to allegations of fraudulent scheme, which means that a complaint alleging fraudulent scheme must reasonably notify each defendant of its role in the scheme. *Montgomery Wards, L.L.C. v. Mease*, No. 99 C 5697, 2000 WL 556758, at *5 (N.D. Ill. May 4, 2000). However, the Rule 9(b) standard is relaxed when the plaintiff lacks access to the facts necessary to comply with the rule. *Corley v. Rosewood Care Ctr., Inc.*, 142 F.3d 1041, 1051 (7th Cir. 1998).

In Counts IV and VIII of the complaint, which allege plaintiffs' claims for fraud and fraudulent scheme, respectively, plaintiffs allege that multiple defendants made certain representations and took certain actions. However, plaintiffs do not specify which of the representations were attributable to Vanguard's representative, Gillman, or which were attributable to Seabury's representative, Artist. Instead, plaintiffs allege that "defendants" made representations, referring either to defendants as a group or to "Gillman and Artist," who were acting on behalf of their respective companies. These representations were made at the Chicago meeting, which was attended by Artist, as Seabury's representative, Gillman, as Vanguard's representative, and plaintiffs. Because plaintiffs allege that they were present at this meeting, the court cannot conclude that plaintiffs lack access to the information as to which defendant made which representations. Consequently, the court finds that plaintiffs' allegations in Counts

IV and VIII of their complaint as to which defendants made which representations fail to comply with the Rule 9(b) standard.

Plaintiffs argue that the Rule 9(b) standard should be relaxed in situations where several defendants are corporate insiders. Additionally, plaintiffs argue that defendants here are corporate insiders of Vanguard. In support of their argument, plaintiffs direct the court to *P & P Mktg., Inc. v. Ditton*, 746 F. Supp. 1354, 1362 (N.D. Ill. 1990). However, in *P & P Mktg.*, the court considered the individual defendants' status as corporate insiders merely as a factor in determining whether defendants were in a better position than plaintiffs to determine each defendant's role in the fraud. *See* 746 F. Supp. at 1363 ("It is consistently alleged that both defendants caused [their corporations] to undertake the various actions involved in the ... incidents. Defendants are in a better position than plaintiff to know which of them or other employees ... actually performed the specific acts alleged."). Because this court has already found that plaintiffs in the instant case did not lack access to the information as to which defendant made which representations, the court finds plaintiffs' argument unpersuasive.

Thus, the court concludes that plaintiffs have failed to comply with Rule 9(b) as to Counts IV and VIII of their complaint. Accordingly, the court grants Seabury's motion to dismiss as to this point. Counts IV and VIII of plaintiffs' complaint are dismissed without prejudice. *See Galdikas v. Fagan*, No. 01 C 4268, 2001 WL 1223539, at *5 (N.D. Ill. Oct. 10, 2001) (dismissing fraud claim without prejudice for failure to comply with Rule 9(b)).

### b. Pleading Fraud "On Information and Belief"

Seabury argues that plaintiffs' allegations of fraud and fraudulent scheme "on information and belief" are insufficient to comply with Rule 9(b). Plaintiffs argue in response that fraud may be pleaded "on information and belief."

As a general rule, allegations of fraud made "on information and belief" are insufficient under Rule 9(b). *Cathedral Trading, LLC v. Chi. Bd. Options Exch.*, 199 F. Supp. 2d 851, 858 (N.D. Ill. 2002) (citing *Uni * Quality, Inc. v. Infotronix, Inc.*, 974 F.2d 918, 924 (7th Cir. 1992)). In order to comply with Rule 9(b), fraud allegations based on "information and belief" "must be accompanied with a statement of facts that form the basis for the belief." *Damian Servs. Corp. v. White*, No. 96 C 8623, 1998 WL 596466, at *4 n.4 (N.D. Ill. Sept. 3, 1998) (quoting *Seagraves, Whiteface & Lubbock R.R. Co. v. Atchison, Topeka & Santa Fe Ry. Co.*, No. 93 C 1442, 1993 WL 524263, at *2 (N.D. Ill. Dec. 10, 1993)). That is, the plaintiff alleging fraud "on information and belief" must state the grounds for his suspicions. *Cathedral Trading*, 199 F. Supp. 2d at 857 (citing *Uni * Quality*, 974 F.2d at 924).

Particularly, Seabury points to the fact that plaintiffs allege "on information and belief" that defendants' misrepresentations were false and misleading and that defendants failed to disclose information, despite having a duty to do so. (Compl. ¶ 64.) However, in Paragraph 65 of the complaint, plaintiffs list seven representations made by defendants, as well as the facts that provide the grounds for plaintiffs' suspicions as to the false or misleading nature of those statements. Therefore, the court finds that plaintiffs have pleaded sufficiently the grounds for their suspicions regarding those statements as to justify pleading the falsity of those statements "on information and belief."

Therefore, the court finds that plaintiffs have failed to identify which misrepresentations are attributable to Seabury and which are attributable to Vanguard, and that plaintiffs have thus failed to comply with Rule 9(b). Accordingly, the court grants Seabury's motion to dismiss, pursuant to Rule 9(b), to that extent. The court dismisses Counts IV and VIII of plaintiffs'

21

complaint without prejudice. Plaintiffs are given until Monday, April 14, 2003 to file an amended complaint that cures the noted deficiencies under Rule 9(b).

### 2. Seabury's Rule 12(b)(6) Motion to Dismiss

Seabury also argues that plaintiffs' complaint should be dismissed pursuant to Rule 12(b)(6), because Counts IV, V, and VIII fail to state claims upon which relief can be granted.

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *Szumny v. Am. Gen. Fin., Inc.*, 246 F.3d 1065, 1067 (7th Cir. 2001). The purpose of a motion to dismiss is not to decide the merits of the challenged claims but to test the sufficiency of the allegations. *Weiler v. Household Fin. Corp.*, 101 F.3d 519, 524 n.1 (7th Cir. 1996). A court will grant a motion to dismiss only if it is impossible for the plaintiff to prevail under any set of facts that could be proven consistent with the allegations. *Forseth v. Vill. of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000).

First, the court will address Seabury's motion to dismiss with regard to Counts IV and VIII of plaintiffs' complaint. Second, the court will review Seabury's motion with regard to Count V.

### a. Motion to Dismiss Counts IV and VIII[4]

Seabury argues that plaintiffs fail to state a claim for fraud and fraudulent scheme because they do not allege that any representation by defendants was false when made. Plaintiffs argue

---

[4]Because Seabury raises the same argument in support of its motion to dismiss Counts IV and VIII, the court will review the motion with regard to these two counts simultaneously.

22

in response that they do, in fact, allege that defendants representations were false or misleading when they were made.

The Illinois Supreme Court has defined fraud as "'anything calculated to deceive, whether it be a single act or combination of circumstances, whether the suppression of truth or the suggestion of what is false, whether it be by direct falsehood or by innuendo, by speech or by silence, by word of mouth or by look or gesture.'" *Strohmaier v. Yemm Chevrolet*, 211 F. Supp. 2d 1036, 1043 (N.D. Ill. 2001) (quoting *Regenold v. The Baby Fold, Inc.*, 369 N.E.2d 858, 865 (Ill. 1977)). In order to support a claim of fraud, a misrepresentation must relate to present or pre-existing facts. *Truserv Corp. v. Chaska Bldg. Ctr., Inc.*, No. 02 C 1018, 2003 WL 942509, at *15 (N.D. Ill. Mar. 6, 2003) (citing *Prime Leasing, Inc. v. Kendig*, 773 N.E.2d 84, 92 (Ill. App. Ct. 2002)).

In this case, plaintiffs' complaint alleges that defendants' representations were false and misleading at the time they were made and that defendants failed to disclose material information that would have prevented the representations from being misleading. Thus, the court finds that plaintiffs have pleaded a claim for common law fraud and fraudulent scheme, under Illinois law. The remainder of defendants' arguments on this point raise issues of fact that are not suitable for disposition in a motion to dismiss pursuant to Rule 12(b)(6). Therefore, the court denies Seabury's motion pursuant to Rule 12(b)(6) as to Counts IV and VIII of plaintiffs' complaint.

### b. Motion to Dismiss Count V

Defendants claim that Count V should be dismissed because it does not state a claim for negligent misrepresentation. In support of their motion, defendants argue: (1) plaintiffs have

not alleged any actionable false statements of material fact and (2) plaintiffs' reliance on defendants' representations was not reasonable.

In Illinois, a plaintiff bringing a claim for negligent misrepresentation must allege: (1) a false statement of material fact; (2) carelessness or negligence in ascertaining the truth of the statement by the party making it; (3) an intention to induce the plaintiff to act; (4) action by the plaintiff in reliance on the truth of the statement; (5) damage suffered by the plaintiff as a result of its reliance; and (6) a duty on the part of the defendant to communicate accurate information. *Lemont Partners, LLC v. Meijer Stores Ltd. P'ship*, No. 02 C 1799, 2002 WL 31641623, at *12 (N.D. Ill. Nov. 26, 2002) (citing *Neptuno Treuhand-Und Verwaltungsgesellschaft MBH v. Arbor*, 692 N.E.2d 812, 818 (Ill. App. Ct. 1998)). Additionally, the plaintiff must allege that the defendant is "in the business of supplying information for the guidance of others in their business dealings." *Id.* (citing *Tolan & Son, Inc. v. KLLM Architects, Inc.*, 719 N.E.2d 288, 296 (Ill. App. Ct. 1999)). Moreover, the plaintiff's reliance upon the defendant's negligent misrepresentation must be reasonable. *In re Rovell*, 194 F.3d 867, 870 (7th Cir. 1999) (citing *Bd. of Educ. of Chi. v. AC&S, Inc.*, 546 N.E.2d 580, 591 (Ill. 1989)). Because the court has already determined, *supra* Sect. II.B.2.a., that plaintiffs sufficiently allege false statements of material fact, the court need determine only whether plaintiffs' reliance was reasonable. *See Quinn v. McGraw-Hill Companies*, 168 F.3d 331, 335 (7th Cir. 1999) (explaining that, under Illinois law, negligent misrepresentation has the same elements as fraudulent misrepresentation, except for the mental state) (quoting *Bd. of Ed. v. A, C & S, Inc.*, 546 N.E.2d 580 (Ill. 1989)).

Seabury argues that plaintiffs' reliance upon its representations was not reasonable because Seabury was retained by Vanguard in this case and, thus, owed no duty to provide

accurate information to plaintiffs. In response, plaintiffs argue that Seabury – as a company in the business of providing information for guidance in business transactions – is responsible for injuries caused by its negligence in communicating information.

Although reasonable reliance is generally a question of fact, a court can determine the issue as a matter of law "when no trier of fact could find that it was reasonable to rely on the alleged statements." *Cozzi Iron & Metal v. U.S. Office Equip.*, 250 F.3d 570, 574 (7th Cir. 2001). In negligent misrepresentation cases, Illinois courts have implied that a party that is in the business of providing information to others for use in business transactions may owe a duty to parties who are not in privity with the defendant. *Walton Risk Servs. v. Clarendon Am. Ins. Co.*, No. 01 C 398, 2002 WL 31415769, at *5 (N.D. Ill. Oct. 25, 2002) (citing *Rozny v. Marnul*, 250 N.E.2d 656, 663 (Ill. 1969)).

First, the court must determine whether plaintiffs sufficiently allege that Seabury had a duty to communicate accurate information. *Id.* Central to this inquiry is whether Seabury was in the business of supplying information for the guidance of others in business decisions. *Id.* The court finds that plaintiffs have sufficiently alleged that Seabury was in such a business. (Compl. ¶ 71.) Second, the court must determine whether Seabury owed that duty to plaintiffs, which depends upon whether: (1) use of the information was foreseeable; (2) Seabury knew the information would be used and relied upon by persons other than Vanguard; and (3) Seabury's liability is restricted to a comparatively small group. *Walton Risk Servs.*, 2002 WL 31415769, at *5. The court finds that plaintiffs have sufficiently alleged all three of these elements. First, plaintiffs allege that Seabury, along with Vanguard, initiated the Chicago meeting and that their representations were made to induce plaintiffs to modify their lease obligations, which made

plaintiffs' use of the information foreseeable. Second, plaintiffs allege that Seabury made representations to them, which indicates that Seabury knew that the information would be used and relied upon by plaintiffs. Third, Seabury made its representations only to the three plaintiffs, which limits its liability for those statements to a small group. Thus, the court finds that the three-part test is met and concludes that plaintiffs have sufficiently alleged that Seabury owed them a duty to communicate accurate information. Therefore, plaintiffs have sufficiently alleged that their reliance upon Seabury's representations was reasonable. Thus, plaintiffs have stated a claim for negligent misrepresentation, under Illinois law.

Consequently, the court denies Seabury's motion to dismiss pursuant to Rule 12(b)(6) as to Count V of plaintiff's complaint.

### III. CONCLUSION

For the foregoing reasons, the court: (1) grants the motion to dismiss the complaint for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2), as to defendants Brian S. Gillman, Ellen N. Artist, David A. Rescino, and Thomas W. Mahr and (2) grants in part and denies in part the motion to dismiss pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6). The court orders plaintiffs to file an amended complaint that complies with Rule 9(b) by Monday, April 14, 2003. Defendants Brian S. Gillman, Ellen N. Artist, David A. Rescino, and Thomas W. Mahr are dismissed with prejudice.

Date: **APR 0 1 2003**

James H. Alesia
United States District Judge