Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James H. Alesia | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 4801 | **DATE** | May 15, 2003 |
| **CASE TITLE** | *Interlease Aviation Investors II (ALOHA) L.L.C., et al. vs. Vanguard Airlines, Inc., et al.* | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. The court denies defendants Pegasus Aviation Inc.'s and Richard S. Wiley's motion to dismiss [20-1]. Defendants Pegasus Aviation, Inc. and Richard S. Wiley have until May 27, 2003 to file a responsive pleading to the amended complaint.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| ✓ | Notified counsel by telephone. | | MAY 16 2003 | |
| ✓ | Docketing to mail notices. | | date docketed | 58 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| CW | courtroom deputy's initials | | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

INTERLEASE AVIATION INVESTORS II )
(ALOHA) L.L.C., an Illinois limited liability )
company, INTERLEASE AVIATION )
INVESTORS III (TACA) L.L.C., an Iowa )
limited liability company, and MIMI )
LEASING CORP., an Iowa corporation, )
                                  )
          Plaintiffs, )
                                  )
          v. )      Case No: 02 C 4801
                                  )
VANGUARD AIRLINES, INC., a Delaware )      Judge James H. Alesia
corporation, PEGASUS AVIATION, INC., )
a foreign corporation, SEABURY GROUP, )
LLC, a New York limited liability company, )
BRIAN GILLMAN, ELLEN N. ARTIST, )
DAVID A. RESCINO, THOMAS W. MAHR, )
and RICHARD S. WILEY, )
                                  )
          Defendants. )

DOCKETED

MAY 16 2003

## MEMORANDUM OPINION AND ORDER

Currently before the court are defendants Pegasus Aviation, Inc.'s and Richard S. Wiley's: (1) motion to dismiss plaintiffs' amended complaint for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2); (2) motion to dismiss plaintiffs' amended complaint for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3); and (3) motion to dismiss Count VIII of plaintiffs' amended complaint pursuant to Federal Rule of Civil Procedure 9(b). For the following reasons, the court denies defendants' motions.



# I. **BACKGROUND**[1]

Defendant Vanguard Airlines, Inc. ("Vanguard") leased several aircraft from plaintiff Interlease Aviation Investors II (ALOHA) L.L.C. ("Interlease II"), plaintiff Interlease Aviation Investors III (TACA) L.L.C. ("Interlease III"), and plaintiff Mimi Leasing Corp. ("Mimi") (collectively, "plaintiffs"). Due to financial hardship, Vanguard later sought to modify the leases. As a result, Vanguard and plaintiffs entered into several agreements in principle, under the terms of which Vanguard issued promissory notes for the amounts of the deferred rents. Vanguard has not made the necessary payments on these promissory notes or on the leases.

On or about January 25, 2001, representatives of Vanguard and defendant Seabury Group LLC ("Seabury") met with plaintiffs and informed them that: (1) Vanguard was insolvent; (2) Vanguard had retained Seabury to provide financing expertise; (3) Vanguard had strategic plans to ensure reliability and reduce costs by converting its fleet to a different type of aircraft leased from Pegasus Aviation, Inc. ("Pegasus"); (4) Pegasus had committed to investing over $7.5 million in capital in Vanguard, $4 million of which had closed; (5) approximately $3 million of additional capital to be invested by Pegasus was contingent upon plaintiffs' deferral of Vanguard's obligations; (6) Vanguard's economic survival depended upon plaintiffs deferring Vanguard's lease obligations; and (7) as a result of Pegasus's investment in Vanguard, it would become a substantial Vanguard shareholder.

---

[1]The following facts are taken from plaintiffs' amended complaint.

The representations made by defendants at the January 25 meeting led plaintiffs to enter several agreements in principle on March 8, 2001.[2] Under the terms of these agreements, plaintiffs agreed to defer Vanguard's obligations under the leases, and Vanguard agreed to provide each plaintiff with a promissory note for the deferred lease payments. However, Vanguard has not made the necessary payments on the promissory notes or on the original leases. Additionally, Vanguard has breached the terms of the agreements in principle.

Plaintiffs allege that from December 2000 through July 2001, Pegasus and Richard S. Wiley ("Wiley"), president of Pegasus, effectively gained control of Vanguard through various investment vehicles. Vanguard was experiencing financial difficulties and needed financing. Wiley and Pegasus were aware of Vanguard's leases with plaintiffs and, according to plaintiffs, made a modification of plaintiffs' leases a condition precedent to providing financing to Vanguard. Plaintiffs allege on information and belief that subsequent to March 8, 2001, while Pegasus and its affiliates were receiving security deposits, lease payments and parts support from Vanguard, Wiley and Pegasus induced Vanguard to breach the agreements in principle, the promissory notes, and the leases with plaintiffs. In May 2001, Pegasus, through Vanguard Acquisition Company ("VAC"), a Pegasus subsidiary, loaned Vanguard $3.5 million in exchange for demand notes, which were applied to the purchase of common stock in July 2001.

---

[2] In their memorandum in opposition to defendants' motion to dismiss, plaintiffs attempt to include a February 14 phone call with defendants as a basis for entering the agreements on March 8. However, plaintiffs' complaint alleges only that the representations made at the January 25 meeting induced plaintiffs to enter the agreements on March 8 and do not refer to the February 14 phone call.

As a result, VAC became owner of 40.6% of Vanguard's common stock and 37.4% of Vanguard's voting stock.

On or about July 26, 2001, Wiley flew to Palwaukee, Illinois and met with Philip Coleman ("Coleman"), plaintiffs' representative. The parties discussed a proposal to restructure Vanguard's debt to plaintiffs. Wiley purported to be negotiating on behalf of Vanguard and on the basis of his and Pegasus's investment in Vanguard.[3] However, during this time period, Wiley was neither an officer or director of Vanguard. Wiley told Coleman that Vanguard would breach the agreements and plaintiffs had to accept a new proposal. On August 1, 2001, Wiley's proposal to restructure Vanguard's debt to plaintiffs was faxed to Coleman. Subsequent to Wiley's proposal, plaintiffs received restructuring proposals from David A. Rescino, vice-president of Vanguard. Vanguard's failure to comply with the agreements in principle, the promissory notes, and the leases with plaintiffs followed.

Plaintiffs brought this action by filing an eight-count complaint, which was subsequently amended. In Count I, Mimi alleges breach of contract against Vanguard. In Count II, Interlease

---

[3]Under the standard for deciding motions to dismiss pursuant to Rule 12(b)(2) and Rule 12(b)(3), the court resolves any conflicts in the pleadings and affidavits in favor of the plaintiffs, but accepts as true any facts in the defendants' affidavits that remain unrefuted by the plaintiffs. *Cont'l Cas. Co. v. Marsh*, No. 01 C 0160, 2002 WL 31870531, at *2 (N.D. Ill. Dec. 23, 2002) (discussing standard for Rule 12(b)(2)); *Promero, Inc. v. Mammen*, No. 02 C 1191, 2002 WL 31455970, at *7 (N.D. Ill. Nov. 1, 2002) (discussing standard for Rule 12(b)(3)). However, for purposes of Rule 9(b), the court must take plaintiffs' allegations as true. *Schupak v. Florescue*, No. 92 C 1189, 1993 WL 256572, at *3 (S.D.N.Y. July 8, 1993). Defendants refute that they "purported to be negotiating on behalf of Vanguard" and offer the declarations of Wiley and Weiss stating that neither made representations they were negotiating on behalf of Vanguard. In response, plaintiffs offer only a citation to their complaint to support their assertion. Thus, for purposes of Rule 12(b)(2) and Rule 12(b)(3) the court accepts Wiley's and Weiss's statements, but for Rule 9(b) the court accepts the allegations of the complaint.

III alleges breach of contract against Vanguard. In Count III, Interlease II alleges breach of contract against Vanguard. In Count IV, plaintiffs allege fraud against Vanguard and Seabury. In Count V, plaintiffs allege negligent misrepresentation against Seabury. In Count VI, plaintiffs allege tortious interference against Pegasus and Wiley. In Count VII, plaintiffs allege unjust enrichment against Pegasus and Wiley. In Count VIII, plaintiffs allege fraudulent scheme against all defendants. This court has subject matter jurisdiction over the case pursuant to 28 U.S.C. § 1332 as complete diversity between the parties exists, and the amount in controversy exceeds $75,000.00.

In response to this complaint, defendants Pegasus and Wiley have filed a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) ("Rule 12(b)(2)") and for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3) ("Rule 12(b)(3)"). Defendants also have moved to dismiss Count VIII pursuant to Federal Rule of Civil Procedure 9(b) ("Rule 9(b)").[4]

## II. DISCUSSION

### A.  Motion to Dismiss For Lack of Personal Jurisdiction Pursuant to Rule 12(b)(2)

#### 1.  Standard for Deciding a Rule 12(b)(2) Motion to Dismiss

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of proving that personal jurisdiction exists. *Cent. States, S.E. & S.W. Areas Pension Fund v.*

---

[4]Defendants originally filed a motion to dismiss plaintiffs' complaint on October 25, 2002. Plaintiffs filed an amended complaint on April 14, 2003. On May 8, 2003, the court granted defendants' oral motion to apply their motion to dismiss for lack of personal jurisdiction and venue to plaintiffs' amended complaint.

*Reimer Express World Corp.*, 230 F.3d 934, 939 (7th Cir. 2000). In deciding the motion to dismiss, the court may receive and consider affidavits from both parties. *Greenberg v. Miami Children's Hosp. Research Inst., Inc.*, 208 F. Supp. 2d 918, 922 (N.D. Ill. 2002) (citing *Kontos v. United States Dep't of Labor*, 826 F.2d 573, 576 (7th Cir. 1987)). Any conflicts in the pleadings and affidavits are to be resolved in the plaintiffs' favor, but the court accepts as true any facts contained in the defendants' affidavits that remain unrefuted by the plaintiffs. *Cont'l Cas. Co. v. Marsh*, No. 01 C 0160, 2002 WL 31870531, at *2 (N.D. Ill. Dec. 23, 2002) (citing *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997)).

## 2. **Defendants' Motion**

In a case based upon diversity of citizenship, a federal district court sitting in Illinois has personal jurisdiction over a nonresident defendant only if an Illinois court would have jurisdiction. *Netzky v. Fiedler*, No. 00 C 4652, 2001 WL 521396, at *1 (N.D. Ill. May 15, 2001). For an Illinois court to have personal jurisdiction over a nonresident defendant, personal jurisdiction must be permitted by: (1) Illinois statutory law; (2) the Illinois Constitution; and (3) the Constitution of the United States. *Cont'l Cas. Co.*, 2002 WL 31870531, at *4. With respect to Illinois statutory law, the Illinois long-arm statute now extends personal jurisdiction to the limit allowed under the Illinois Constitution and the Constitution of the United States. *LaSalle Bank Nat'l Ass'n v. Epstein*, No. 99 C 7820, 2000 WL 283072, at *1 (N.D. Ill. Mar. 9, 2000) (citing *RAR, Inc.*, 107 F.3d at 1276). "'Because the Illinois statute authorizes personal jurisdiction to the [federal] constitutional limits, the three inquiries ... collapse into two constitutional inquiries – one state and one federal.'" *Cont'l Cas. Co.*, 2002 WL 31870531, at

6

*4 (quoting *RAR, Inc.*, 107 F.3d at 1276). If jurisdiction is improper under either the Illinois Constitution or the Constitution of the United States, the court cannot exercise jurisdiction over the defendant. *Id.*

The Illinois Supreme Court has held that, under the Illinois Constitution's guarantee of due process, jurisdiction is to be "'asserted only when it is fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois.'" *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 715 (7th Cir. 2002) (quoting *Rollins v. Ellwood*, 565 N.E.2d 1302, 1316 (Ill. 1990)). The Seventh Circuit has stated the Illinois courts "have given little guidance as to how state due process protection differs from federal protection in the context of personal jurisdiction." *RAR*, 107 F.3d at 1276. Furthermore, the Seventh Circuit has recently found that "there is no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction." *Hyatt*, 302 F.3d at 715 (citing *RAR*, 107 F.3d at 1276; *Klump v. Duffus*, 71 F.3d 1368, 1371 n.4 (7th Cir. 1995)). Additionally, the Seventh Circuit has noted that in no case since the Illinois Supreme Court's 1990 decision in *Rollins* has an Illinois court found federal due process to allow personal jurisdiction while Illinois due process prohibited it. *Id.* Since those statements by the Seventh Circuit, other courts in the circuit have bypassed the Illinois due process analysis and conducted only a federal personal jurisdiction analysis. *See Cont'l Cas. Co.*, 2002 WL 31870531, at *4 (conducting only a federal due process analysis because the parties did not present any evidence to suggest that the outcome would be otherwise under state law); *United Fin. Mortgage Corp. v. Bayshores Funding Corp.*,

7

245 F. Supp. 2d 884, 891-92 (N.D. Ill. Oct. 18, 2002) (condensing personal jurisdiction analysis to a single federal due process inquiry).

In this case, the parties make no arguments regarding whether personal jurisdiction would be "fair, just, and reasonable" under the Illinois Constitution. Rather, they dispute whether personal jurisdiction would comport with federal due process requirements. Thus, the court will proceed to the federal due process inquiry. *See Mac Funding Corp. v. N.E. Impressions, Inc.*, 215 F. Supp. 2d 978, 980 (N.D. Ill. 2002) (proceeding directly to the federal personal jurisdiction analysis where parties failed to address Illinois standards and court's own research revealed nothing that would indicate that Illinois law would lead to a different outcome than federal law).

Under the Constitution of the United States, the Due Process Clause of the Fourteenth Amendment limits a state court's power to assert personal jurisdiction over a nonresident defendant. *RAR*, 107 F.3d at 1277 (citation omitted). Federal due process requires that a nonresident defendant have certain minimum contacts with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Hyatt*, 302 F.3d at 713 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (additional citation omitted). This standard varies depending on whether the jurisdiction alleged is general or specific. *RAR*, 107 F.3d at 1277.

General jurisdiction exists in cases where a defendant has "continuous and systematic" business contacts with the forum state. *Hyatt*, 302 F.3d at 713. In contrast, in specific jurisdiction cases, the suit must "arise out of" or be "related to" the defendant's minium contacts

8

with the forum state. *Id.* at 716. In this case, defendants argue neither general nor specific personal jurisdiction exists. The court will address each basis for personal jurisdiction in turn.

### a.    General personal jurisdiction

To find general personal jurisdiction, the contacts must be "'so substantial and of such a nature as to justify suit against [the defendant] on causes of action arising from dealings entirely different from those activities.'" *Clearclad Coatings, Inc. v. Xontal Ltd.*, No. 98 C 7199, 1999 WL 652030, at *16 (N.D. Ill. Aug. 20, 1999) (quoting *Glass v. Kemper Corp.*, 930 F. Supp. 332, 338 (N.D. Ill. 1996)). In evaluating whether general jurisdiction exists, courts examine: (1) whether and to what extent the defendant conducts business in the forum state; (2) whether the defendant maintains an office or employees within the forum state; (3) whether the defendant sends agents into the forum state to conduct business; (4) whether the defendant advertises or solicits business in the forum state; and (5) whether the defendant has designated an agent for service of process in the forum state. *Birnberg v. Milk St. Residential Assoc. Ltd. P'ship*, Nos. 02 C 0978, 02 C 3436, 2003 WL 151929, at *3 (N.D. Ill. Jan. 21, 2003) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984)). Plaintiffs allege that defendants "conduct and, at relevant times, have conducted systematic and continuous business within the State of Illinois." (Pl.'s Am. Compl. at ¶ 16.) The court will address the contacts of Pegasus and Wiley in turn.

### i.    Pegasus

Plaintiffs cite the following contacts in support of their argument that Pegasus conducts continuous and systematic business in Illinois: Pegasus initiated 2,876 phone calls to Illinois

9

phone numbers from early 2000 to mid-November 2001; Pegasus leases jets to international carriers, many of which use Chicago's airports; Pegasus has a contract with United Airlines, which is based in Illinois, and Pegasus has earned gross revenues in excess of $11 million from this contract during the past two and a half years; Pegasus paid in excess of $12 million for goods and services to vendors with Illinois addresses; Pegasus employees traveled to Illinois on nine separate business trips from November 2000 to January 2002; in addition, Wiley traveled to Illinois three times and Robert Brown, director and executive vice-president of Pegasus, traveled to Illinois on another occasion.[5]

Pegasus refutes that it has continuous or systematic contacts with Illinois. Pegasus is a California corporation with its principal place of business in California. Pegasus is not incorporated, headquartered, or qualified to do business in Illinois. Pegasus does not own any real property in Illinois. Nor does Pegasus have employees, offices or facilities, a mailing address, or telephone number in Illinois. Pegasus does not advertise in Illinois. Pegasus argues the phone calls to Illinois numbers are insufficient to uphold general jurisdiction because the majority of calls did not relate to any transaction of business in Illinois. With regard to Pegasus's leases with United, Pegasus argues the leases were negotiated, entered, and performed outside of Illinois and do not constitute the systematic and continuous transaction of business. Pegasus also challenges that payments to vendors constitutes the transaction of business and

---

[5]Plaintiffs fail to cite any case law in support of their argument that the use of Chicago airports by plaintiffs' lessees constitutes the continuous and systematic transaction of business in Illinois. The court finds the unilateral actions of plaintiffs' lessees insufficient to find plaintiffs engaged in the continuous and systematic transaction of business in Illinois.

emphasizes the only connection to Illinois was the vendors' use of an Illinois billing agent or drop-box payment address.

None of the contacts provided by plaintiffs are sufficient to constitute the continuous and systematic transaction of business in Illinois. First, the phone calls made to Illinois are not substantial enough to subject Pegasus to general jurisdiction. *See Greenberg*, 208 F. Supp. 2d at 926 n.6 (stating phone calls from defendant outside forum state to individuals within forum state are insufficient to provide a basis for specific personal jurisdiction unless message sent constitutes an intentional tort). Second, Pegasus's leases with United are also inadequate contacts to provide general jurisdiction. Defendants have provided the following facts, unrefuted by plaintiffs, regarding the United leases: Pegasus became lessor by stepping into the shoes of a Washington, D.C. entity, as the beneficiary of a Utah entity; the leased airplanes were not based in Illinois and were used in United's Asia routes; the leases have expired. Because Pegasus did not solicit, negotiate, or perform the leases in Illinois, the United leases do not constitute a basis for general jurisdiction. *See Rohde v. Cent. R.R. of Indiana*, 930 F. Supp. 1269, 1272-73 (N.D. Ill. 1996) (examining where a contract was solicited, negotiated, and performed to determine whether defendants' contractual arrangements constituted continuous and systematic business contacts). Third, Pegasus's payments to Illinois billing agents for non-Illinois vendors are also insufficient contacts for general jurisdiction. *Federated Rural Elec. Ins. Corp. v. Inland Power & Light Co.*, 18 F.3d 389, 395 (7th Cir. 1994) (stating "the purchase of goods or insurance from the forum state alone is an insufficient foundation upon which to assert personal jurisdiction"). Fourth, defendants' infrequent trips to Illinois cannot be characterized

as continuous or systematic. Finally, it is undisputed Pegasus has never been incorporated in Illinois, maintained an office or employee in Illinois, designated an agent for service of process in Illinois, or advertised in Illinois. Thus, the court lacks general personal jurisdiction over Pegasus.

### ii. Wiley

Plaintiffs assert Wiley is subject to general personal jurisdiction based upon the contacts of companies under Wiley's virtual control. First, plaintiffs point to the contacts of International Aero Components ("IAC") of which Wiley was one of the company's two directors and 80% shareholder. IAC, a now-defunct Arizona corporation located in Arizona, had contacts with twenty-two vendors and eleven customers in Illinois. Second, plaintiffs cite to the contacts of Airline Investments, Inc. ("AII"), which they claim to be under the control of Pegasus and Wiley. AII is the 100% owner of Vanguard Acquisition Company ("VAC"), which is a part-owner of Vanguard Airlines. AII is also 100% owner of Transmeridian Acquisition Company, which owns Transmeridian Airlines. Vanguard Airlines and Transmeridian Airlines operated out of Chicago airports. Plaintiffs assert they have been unable to determine the ownership of AII because information regarding AII's management and control is within the exclusive possession of the Pegasus legal department. However, plaintiffs allege AII is owned and operated by Pegasus managers as part of their compensation. AII has never issued stock. Plaintiffs claim a good faith basis to infer that Wiley and Pegasus effectively control AII and Transmeridian.

Defendants argue Wiley's relationships to IAC and AII are irrelevant because plaintiffs have failed to make a showing of alter ego status, which is required to subject the individual

12

shareholder of a company that does business in the forum to jurisdiction. Further, defendants argue that even if plaintiffs could make the requisite showing of alter ego status, IAC and AII did not have sufficient contacts with Illinois to establish general jurisdiction.

Plaintiffs have provided relatively little information regarding the contacts of IAC and AII to Illinois for purposes of general jurisdiction. However, assuming IAC and AII have sufficient contacts to constitute the continuous and systematic transaction of business in Illinois, plaintiffs have not provided evidence to impute the contacts of IAC and AII to Wiley. The Seventh Circuit has held that "stock ownership in or affiliation with a corporation, without more, is not a sufficient minimum contact." *Cent. States, S.E. & S.W. Areas Pension Fund,* 230 F.3d at 943. The court reasoned that "where corporate formalities are observed, a company's owners reasonably expect they cannot be held liable for the acts of the company." *Id.* at 944. Thus, to impute the contacts of IAC and AII to Wiley on the basis of his ownership interest in the companies, plaintiffs must provide evidence that either justifies piercing the corporate veil or that Wiley substantially controls the activities of IAC and AII in Illinois. *Birnberg,* 2003 WL 151929, at *10. Plaintiffs' claim of a "good faith basis" to infer Wiley and Pegasus effectively control AII and Transmeridian is insufficient to attribute these contacts to Wiley. *IDS Life Ins. Co. v. SunAmerican Life Ins. Co.,* 136 F.3d 537, 540 (7th Cir. 1998) (stating allegations parents "controlled, directed, and supervised" subsidiaries would be insufficient, without a basis for piercing the corporate veil, to attribute subsidiaries' actions to the parent). Plaintiffs have failed to provide sufficient evidence that Wiley dominated IAC or AII or that corporate formalities were not observed. Thus, the contacts of IAC and AII cannot be imputed to Wiley. Therefore, the court lacks general jurisdiction over Wiley.

13

Therefore, the court finds Pegasus and Wiley are not subject to general personal jurisdiction. Thus, the court will determine whether specific personal jurisdiction is appropriate.

### b. Specific personal jurisdiction

In determining whether specific personal jurisdiction exists, the court must first address whether the defendant has "'purposefully established minimum contacts with the forum State.'" *Hyatt*, 302 F.3d at 716 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)). It is crucial that the court determine whether the defendant "'should reasonably anticipate being haled into court [in the forum State].'" *Id.* (quoting *Burger King Corp.*, 471 U.S. at 474 (citation omitted)). It is reasonable for a defendant to anticipate being haled into court in the forum state when it has "'purposefully avail[ed] itself of the privilege of conducting activities' there." *Id.* (quoting *Burger King Corp.*, 471 U.S. at 475 (citation omitted)).

Second, the court must determine whether those contacts would make personal jurisdiction "reasonable and fair under the circumstances." *RAR*, 107 F.3d at 1277. After minimum contacts have been established, a defendant "can only escape jurisdiction by making a 'compelling case' that forcing it to litigate in [the forum] would violate traditional notions of fair play and substantial justice." *Logan Prods., Inc. v. Optibase, Inc.*, 103 F.3d 49, 53 (7th Cir. 1996) (quoting *Burger King Corp.*, 471 U.S. at 477). In assessing whether jurisdiction is consistent with fair play and substantial justice the court should consider: (1) the burden on the defendant in litigating in the forum; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interests of the interstate judicial system in obtaining an efficient resolution of the controversy; and (5) the interests of the several states in

furthering fundamental substantive policies. *Id.* The court will now apply the above principles to Pegasus and Wiley.

### i.     Minimum contacts

Because Pegasus and Wiley share the same contacts with Illinois, the court will address simultaneously whether it is constitutional to assert personal jurisdiction over both of them. In the complaint, plaintiffs allege defendants Pegasus and Wiley are subject to jurisdiction because "plaintiffs' causes of action arise from their transaction of business and commission of a tortious act within the State of Illinois." (Pl.'s Am. Compl. at ¶ 16.) In support of specific jurisdiction, plaintiffs cite the following contacts: defendants made two trips to Illinois on July 24 and August 9, 2001 to meet with Coleman, plaintiffs' representative; defendants transmitted three proposals and a letter to Coleman in Illinois via fax; and defendants initiated nineteen phone calls to Coleman in Illinois over a seven-month period.

Defendants argue that none of the causes of action plaintiffs allege "arise out of" any of the Illinois contacts cited by plaintiffs. First, defendants assert the tortious interference claim could not have arisen out of defendants' contacts in Illinois because the party allegedly interfered with – Vanguard – did not participate in any of the contacts. Second, defendants argue the unjust enrichment claim does not arise out of any of defendants' contacts with Illinois because neither the meetings nor the other contacts led to any restructuring of the leases. Third, defendants claim the fraudulent scheme cannot have arisen out of the contacts because the alleged co-conspirators, Seabury and Vanguard, were not participants in any of the contacts and none of the contacts are alleged to have resulted in any detrimental action or inaction.

15

With regard to minimum contacts, courts have recognized that "'one who commits tortious acts against an Illinois business should reasonably anticipate being haled into court there.'" *Digital Merch. Sys., Inc. v. Oglesby*, No. 98 C 8003, 1999 WL 1101769, at *3 (N.D. Ill. Nov. 30, 1999) (quoting *Telular Corp. v. Vitech Am., Inc.*, No. 96 C 4749, 1996 WL 616590, at *2 (N.D. Ill. Oct. 21, 1996)). "Therefore, '[a]llegations of tortious conduct directed at an Illinois business ... establish the minimum contacts necessary under the federal due process clause.'" *Id.* (quoting *Telular Corp.*, 1996 WL 616590, at *2). Further, "the state in which the injury (and therefore the tort) occurs may require the wrongdoer to answer for its deeds even if events were put in train outside its borders." *Janmark, Inc. v. Reidy*, 132 F.3d 1200, 1202 (7th Cir. 1997). Thus, even where all other conduct takes place elsewhere, jurisdiction is proper if the injury transpires in Illinois. *Celozzi v. Boot*, No. 00 C 3285, 2000 WL 1141568, at *3 (N.D. Ill. 2000) (citing *Stein v. Rio Parismina Lodge*, 695 N.E.2d 518, 523 (Ill. App. Ct. 1998)). But, where the injury is economic, the plaintiff must additionally demonstrate an intent to affect an Illinois interest. *Id.* (citing *Arthur Young & Co. v. Bremer*, 554 N.E.2d 671, 676 (Ill. App. Ct. 1990)).

In the instant case, plaintiffs have alleged an economic injury in Illinois as a result of defendants' tortious conduct. Two of the plaintiffs are Illinois corporations, Interlease II is an Illinois company and both Interlease II and Interlease III have their principal places of business in Illinois. Plaintiffs allege Vanguard paid $5.44 million in lease payments to Pegasus while Vanguard failed to make any lease payments to plaintiffs. The breach of contract by Vanguard, allegedly induced by Pegasus and Wiley, occurred in Illinois where the lease payments were to be received by two of the plaintiffs. *See Publ'n Mgmt. Inc. v. Am. Def. Preparedness Ass'n*, No.

89 C 1110, 1989 WL 165056, at *10 (N.D. Ill. Dec. 29, 1989) (discussing tortious interference case that found contract was breached in Illinois when the payments due in Illinois were not received).

Further, plaintiffs have demonstrated defendants' intent to affect an Illinois interest. Plaintiffs have alleged defendants' conduct was intentional, "Pegasus and Wiley induced the breach of [sic] by Vanguard of its obligations under the Leases, intentionally, without justification and through improper means." (Pl.'s Am. Compl. at ¶ 88.) Also, plaintiffs have demonstrated that defendants knew they were dealing with Illinois corporations. Defendants met with Coleman, plaintiffs' representative, in Illinois on two occasions and contacted Coleman in Illinois through mailings, phone calls, and faxes. In addition, these contacts were part of the alleged fraudulent scheme to negotiate in bad faith and extend the time period for Vanguard to use the plaintiffs' aircraft without payment. *See Celozzi*, 2000 WL 1141568, at *3 (discussing *FMC Corp. v. Varonos*, 892 F.2d 1308 (7th Cir. 1990), in which the Seventh Circuit "determined that communications by nonresident defendant, coupled with an intent to further her Illinois scheme, was a sufficient basis for jurisdiction, and that making such communications as part of a scheme to defraud an Illinois resident clearly evidenced an intent to affect an Illinois interest."). Although portions of the alleged tortious conduct may have occurred outside of Illinois, the economic injury suffered in Illinois combined with defendants' intent to affect an Illinois interest demonstrated by the defendants' communications with plaintiffs' representative constitute

17

sufficient minimum contacts for the court to exercise specific personal jurisdiction over Pegasus and Wiley.[6]

Therefore, the court finds Pegasus and Wiley have established minimum contacts with Illinois.

### ii.    Fairness

Defendants argue that even if the court finds the requisite minimum contacts, it would offend traditional notions of fair play and substantial justice to exercise personal jurisdiction over them in this case. First, defendants argue the contacts were not substantial enough to find they "invoked the benefits of protections" of Illinois law. Second, defendants argue the burden of having to defend in Illinois would be great as defendants' witnesses, documents, and counsel are located in California.

The court finds it does not offend traditional notions of fair play and substantial justice to require Pegasus and Wiley to defend this action in Illinois. First, as discussed previously, *supra* Sect. II.A.2.b.i., defendants should reasonably anticipate being haled into an Illinois court because they have committed a tortious act against an Illinois business. *See Digital Merch. Sys., Inc.*, 1999 WL 1101769, at *3 (quoting *Telular Corp.*, 1996 WL 616590, at *2). Second, litigating this case in Illinois would place a minimal burden upon Pegasus and Wiley because Chicago is a major metropolitan area and defendants have traveled to Illinois previously. *See Logan Prods., Inc.*, 103 F.3d at 54 (noting that it is usually not unfair to force a defendant to

---

[6]Because the court finds personal jurisdiction proper due to the commission of a tortious act in Illinois, the court need not address plaintiffs' alternative basis for jurisdiction, the transaction of business in Illinois.

defend a lawsuit in a state in which it has engaged in economic activity); *Birnberg*, 2003 WL 151929, at *8 (holding that travel from Massachusetts to Illinois was not oppressive due to modern advances in communication and transportation) (citation omitted). Third, Illinois has a significant interest in the adjudication of this case given that Interlease II is an Illinois company and both Interlease II and Interlease III have their principal places of business in Illinois. Finally, defendants' allegedly tortious conduct caused injury in Illinois. *See Int'l Molding Mach. Co. v. St. Louis Conveyor Co.*, No. 01 C 8305, 2002 WL 1838130, at *5 (N.D. Ill. Aug. 12, 2002) (holding that Illinois has a strong interest in adjudicating cases arising from injuries occurring in its borders). Thus, the court finds that the exercise of personal jurisdiction over Pegasus and Wiley in this case does not offend traditional notions of fair play and substantial justice.

Therefore, the court concludes that it is consistent with federal constitutional principles to exercise personal jurisdiction over Pegasus and Wiley in this case.

### c. The Fiduciary Shield Doctrine

Based on the principles of fairness required by the Illinois Constitution, Illinois allows a nonresident defendant to raise a defense to personal jurisdiction known as the fiduciary shield doctrine. *Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 912 (7th Cir. 1994) (citing *Rollins*, 565 N.E.2d at 1313-18). The fiduciary shield doctrine denies jurisdiction over an individual whose presence and activity in Illinois were solely on behalf of his employer or other principal. *Clark Prods., Inc. v. Rymal*, No. 02 C 6893, 2002 WL 31572569, at *3 (N.D. Ill. Nov. 19, 2002) (citing *Rice*, 38 F.3d at 912). The Illinois Supreme Court has stated that where an individual

defendant's conduct in Illinois is a product of – and is motivated by – his "employment situation and not his personal interests ... it would be unfair to use this conduct to assert personal jurisdiction over him as an individual." *Rollins*, 565 N.E.2d at 1314.

However, there are limitations on the defendant's ability to use the fiduciary shield doctrine as a defense. First, the fiduciary shield doctrine is discretionary or "equitable," rather than an absolute entitlement, and should be applied only where equity demands it. *Consumer Benefit Servs., Inc. v. Encore Mktg. Int'l, Inc.*, No. 01 C 6985, 2002 WL 31427021, at *3 (N.D. Ill. Oct. 30, 2002). Second, the doctrine will be removed if the defendant was acting also, or instead, to serve his own personal interests. *Rice*, 38 F.3d at 912. Third, the discretion exercised by the individual is a factor that a court should consider when determining whether the fiduciary shield doctrine applies to a case. *LaSalle Bank Nat'l Ass'n*, 2000 WL 283072, at *1. With those three exceptions in mind, the court will determine whether the fiduciary shield doctrine prevents it from exercising jurisdiction over Wiley.

Defendants argue that Wiley is not subject to personal jurisdiction because he was acting as a fiduciary for Pegasus and plaintiffs have not alleged Wiley attended the meeting on his own behalf or that he personally benefitted from Pegasus's conduct. In response, plaintiffs argue Wiley cannot avail himself of the fiduciary shield because he is the president, chairman, and 91% owner of Pegasus.

The mere fact that an individual "is a member of management or holds controlling positions in a corporation does not nullify the protection of the fiduciary shield." *Int'l Fin. Servs. Corp. v. Didde Corp.*, No. 00 C 6433, 2002 WL 398513, at *5 (N.D. Ill. Mar. 14, 2002)

20

(citations omitted). This is due to Illinois's recognition that corporate officers, directors, and shareholders are separate and distinct from the corporation. *Cont'l Cas. Co.*, 2002 WL 31870531, at *7. However, courts have held that the fiduciary shield does not apply to "'an individual who is a high-ranking company officer or shareholder [who] has a direct financial stake in the company's health.'" *United Fin. Mortgage Corp.*, 245 F. Supp. 2d at 895 (quoting *R-Five, Inc. v. Sun Tui, Ltd.*, No. 94 C 4100, 1995 WL 548633, at *5 (N.D. Ill. Sept. 12, 1995)). Thus, in reviewing the personal interest exception, the critical factor is the individual's status as a corporate shareholder, not merely whether he is an officer or director. *Plastic Film Corp., Inc. v. Unipac, Inc.*, 128 F. Supp. 2d 1143, 1147 (N.D. Ill. 2001).

Wiley's personal interest as a majority shareholder and his ability to exercise discretion preclude Wiley from availing himself of the fiduciary shield. Plaintiffs assert, and defendants do not dispute, that Wiley is the 91% owner of Pegasus. Thus, Wiley cannot invoke the fiduciary shield because his interests as the chief shareholder of Pegasus are coextensive with the interests of Pegasus. *See Kohler Co. v. Kohler Int'l, Ltd.*, 196 F. Supp. 2d 690, 699 (N.D. Ill. 2002) (finding fiduciary shield did not apply to defendant – officer, director, and chief shareholder of corporation – because his interests were coextensive with those of corporation). Further, Wiley does not allege that he was merely obeying orders nor does he dispute that he acted with discretion. *See Ruca Hardware, Ltd. v. Ruca Chien*, No. 94 C 3635, 1994 WL 548196, at *5 (N.D. Ill. Oct. 4, 1994) (finding fiduciary shield inapplicable where defendants failed to allege their actions were required by their employer). Thus, the court finds the Illinois fiduciary shield doctrine inapplicable to Wiley.

21

Therefore, the court has personal jurisdiction over Pegasus and Wiley. Thus, the court denies defendants' motion pursuant to Rule 12(b)(2) to dismiss for lack of personal jurisdiction.

## B. Defendants' Motion to Dismiss for Improper Venue Pursuant to Rule 12(b)(3)

### i. Standard for Deciding a Rule 12(b)(3) Motion to Dismiss

In ruling on a motion to dismiss under Rule 12(b)(3), the court takes all the allegations in the complaint as true unless contradicted by the defendant's affidavit and may examine facts outside the complaint. *Promero, Inc. v. Mammen*, No. 02 C 1191, 2002 WL 31455970, at *7 (N.D. Ill. Nov. 1, 2002). The court must resolve all factual conflicts and draw all reasonable inferences in the plaintiff's favor. *Id.* The plaintiff bears the burden of establishing that venue is proper. *Id.*

### 2. Defendants' Motion

Defendants argue venue is improper in this district because the events giving rise to the claims did not occur in Illinois. Plaintiffs argue venue is proper in this district because a substantial part of the events giving rise to the plaintiffs' claims occurred in this district.

Venue in a diversity action is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(a)(2) ("§ 1391(a)(2)"). For venue to be proper under § 1391(a)(2), a majority of the events giving rise to the claim need not occur in the venue, only a "substantial part." *Promero, Inc.*, 2002 WL 31455970, at *7 (citing *Pasulka v. Sykes*, 131 F. Supp. 2d 988, 994 (N.D. Ill. 2001)). The requirements of § 1391(a)(2) "'may be satisfied by a communication transmitted to or from the district in which the cause of action was filed, given a sufficient relationship between the

22

communication and the cause of action.'" *Fogelson v. Iatrides*, No. 99 C 6892, 2000 WL 631293, at *3 (N.D. Ill. May 12, 2000) (quoting *Consol. Ins. Co. v. Vanderwoude*, 876 F. Supp. 198, 200-01 (N.D. Ind. 1995) (citation omitted)).

In this case, plaintiffs have alleged several communications transmitted to the Northern District of Illinois, which have a sufficient relationship to the causes of action. Plaintiffs allege Pegasus and Wiley made two trips to Illinois, transmitted three proposals and a letter to plaintiffs' representative, Coleman, and initiated nineteen phone calls to Coleman. These contacts were in furtherance of defendants' proposal to restructure plaintiffs' leases with Vanguard. Plaintiffs allege that these contacts were part of the defendants' tortious interference with the leases between plaintiffs and Vanguard. As a result of these contacts, plaintiffs allege that defendants have been unjustly enriched. Further, these contacts were part of the alleged fraudulent scheme to negotiate in bad faith over an extended period of time. Thus, a substantial part of the events or omissions giving rise to the plaintiffs' claims occurred in this district and venue is proper. Therefore, the court denies defendants' motion to dismiss based on Rule 12(b)(3).

## C.    Defendants' Motion to Dismiss Pursuant to Rule 9(b)

### 1.    Standard for Deciding a Rule 9(b) Motion to Dismiss

Rule 9(b) requires a plaintiff to plead the circumstances constituting fraud "with particularity." FED. R. CIV. P. 9(b). To meet the particularity requirements of Rule 9(b), a complaint must specify the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was

communicated to the plaintiff. *Slaney v. Int'l Amateur Ath. Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001). In ruling on a motion to dismiss pursuant to Rule 9(b), the court must "'read the complaint generously and draw all inferences in favor of [the] plaintiffs.'" *Schupak v. Florescue*, No. 92 C 1189, 1993 WL 256572, at *3 (S.D.N.Y. July 8, 1993) (quoting *Griffin v. McNiff*, 744 F. Supp. 1237, 1244 (S.D.N.Y. 1990)). With this standard in mind, the court will address the defendants' argument.

### 2. Defendants' Motion

Defendants argue that plaintiffs' allegations of fraudulent scheme in Count VIII are insufficient because they do not particularize Pegasus's or Wiley's alleged misrepresentations, but impermissibly "lump" the defendants together. Thus, defendants assert the court cannot find personal jurisdiction over Pegasus and Wiley based upon Count VIII.

In cases involving multiple defendants, the complaint should notify each defendant of the nature of his alleged participation in the fraud. *Fishman v. Meinen*, No. 02 C 3433, 2003 WL 444223, at *6 (N.D. Ill. Feb. 24, 2003) (citing *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994)). A complaint that does not specify which defendants took part in which activity is insufficient to satisfy Rule 9(b). *Id.* (citing *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990)). This standard also applies to allegations of fraudulent scheme, which means that a complaint alleging fraudulent scheme must reasonably notify each defendant of its role in the scheme. *Montgomery Wards, L.L.C. v. Mease*, No. 99 C 5697, 2000 WL 556758, at *5 (N.D. Ill. May 1, 2000).

24

However, the Seventh Circuit has recognized that the particularity requirement of Rule 9(b) must be relaxed where the plaintiff lacks access to all facts necessary to detail his claim, and that is most likely to occur where the plaintiff alleges a fraud against one or more third parties. *Corley v. Rosewood Care Ctr., Inc.*, 142 F.3d 1041, 1051 (7th Cir. 1998). This is appropriate as "'[i]t is obvious that a plaintiff may not be privy to the workings of a group of defendants who have acted in concert to defraud him.'" *Reshal Assocs., Inc. v. Long Grove Trading Co.*, 754 F. Supp. 1226, 1231 (N.D. Ill. 1990) (quoting *Lincoln Nat'l Bank v. Lampe*, 414 F. Supp. 1270, 1279 (N.D. Ill. 1976)). But, the plaintiff is expected to "'identify the particular defendants who allegedly dealt with him, and ... describe the circumstances under which particular defendants dealt directly with him.'" *Id.* (quoting *Lincoln Nat'l Bank*, 414 F. Supp. at 1279).

In this case, plaintiffs have alleged sufficiently Pegasus's and Wiley's roles in the fraudulent scheme. In Count VIII, plaintiffs allege that all defendants, acting in concert and through a series of deceptions, schemed to defraud plaintiffs with the intent that Vanguard could continue to operate plaintiffs' aircraft without paying rent. Specifically, plaintiffs allege that "Vanguard, and the other defendants purportedly acting on behalf of Vanguard, negotiated in bad faith with plaintiffs over an extended period of time so that Vanguard could continue to operate the aircraft during the 6-9 month period necessary to add the Pegasus aircraft to Vanguard's operating certificate and defendants could delay plaintiffs from repossessing their aircraft until Vanguard no longer needed them." (Pl.'s Am. Compl. at ¶ 95.)

The specific actions of Pegasus and Wiley in this scheme are stated in the realleged paragraphs detailing the tortious interference claim against Pegasus and Wiley. Plaintiffs allege

25

that on or about July 24, 2001, Wiley traveled to Illinois to meet with Coleman. Although Wiley was neither an officer nor a director of Vanguard at the time, he purported to be negotiating on behalf of Vanguard. Wiley told Coleman that Vanguard would breach its commitments and that plaintiffs would have to accept a new, less attractive proposal from Vanguard. Correspondence between Wiley and Coleman concerning the restructuring proposals continued through August 2001. These allegations demonstrate Pegasus's and Wiley's roles in extending the time period for Vanguard and delaying plaintiffs from repossessing their aircraft. Thus, plaintiffs have satisfied Rule 9(b) by placing Wiley and Pegasus on notice of their roles in the fraudulent scheme. Therefore, the court denies defendants' motion to dismiss Count VIII pursuant to Rule 9(b).

## III. CONCLUSION

For the foregoing reasons, the court denies defendants' motions.

Date: **MAY 1 5 2003**

James H. Alesia
United States District Judge

26